**WO**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

Eric Schiro,

Plaintiff,

v.

Commissioner of Social Security Administration,

Defendant.

No. CV-25-00474-TUC-AMM (MSA)

**REPORT AND RECOMMENDATION**

Plaintiff Eric Schiro seeks judicial review of an unfavorable decision issued by the Commissioner of the Social Security Administration. For the following reasons, the Court will recommend that the Commissioner's decision be reversed and that this matter be remanded for a new hearing and decision.

**Background**

Plaintiff is 53 years old. (*See* AR 273 (birthdate).) He has a master's degree in business management. (AR 1033.) He served in the Persian Gulf War and in Somalia as an Army Ranger, where he saw combat and witnessed the death of a friend. (AR 1154.) After the military, he held numerous jobs in retail, construction, and maintenance. (AR 323, 340.)

In 2023, Plaintiff filed an application for disability insurance benefits, alleging disability based on posttraumatic stress disorder, depression, and anxiety. (AR 273, 322.) He reported to the agency that his symptoms included difficulty getting along with others, especially coworkers or supervisors, and that he was prone to angry outbursts that had led to him being disciplined at or fired from almost all his jobs. (AR 332, 337, 339, 357–58.)

The record corroborates that Plaintiff has quit or been fired on numerous occasions because of workplace conflicts. (AR 605 (July 2021: Plaintiff was "frustrated by his pattern of irritability, anger, and aggression which has led to him losing 3 jobs in 3 years"); AR 1207 (August 2022: Plaintiff was fired for being "combative" toward his coworkers); AR 1195 (May 2023: Plaintiff quit because of a conflict in which his supervisor "question[ed his] integrity").) It further indicates that his marriage ended because his ex-wife "got scared" of him, and that he was arrested in mid-2021 following an angry outburst at a rental-car clerk and assault on the responding police officer. (AR 604, 648.) Plaintiff also reported to the agency that he tended to isolate himself and avoid crowds, which is corroborated by the record. (AR 359, 366, 540, 1173.)

Plaintiff's application was denied initially in October 2023 and on reconsideration in March 2024. (AR 65–66.) He requested a hearing before an administrative law judge (ALJ). (AR 99.) After his application was erroneously dismissed and then reinstated, the ALJ held a hearing in April 2025. (AR 32, 76–77, 80–81.) At the hearing, Plaintiff reported once more that he had significant difficulties getting along with others, was prone to angry outbursts, and tended to isolate himself. (AR 47–48, 50–51.)

After the hearing, the ALJ issued a written decision following the five-step process for determining whether a person is disabled. *See* 20 C.F.R. § 404.1520. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date. (AR 19.) At step two, the ALJ found that Plaintiff had three severe impairments: posttraumatic stress disorder, depressive disorder, and anxiety disorder. (AR 19.) At step three, the ALJ found that Plaintiff did not have an impairment or a combination of impairments that met or medically equaled the severity of a listed impairment. (AR 20.) Between steps three and four, the ALJ found that Plaintiff had the residual functional capacity to perform a full range of work at all exertional levels with certain nonexertional limitations, including that he could only occasionally interact with the public, coworkers, and supervisors. (AR 21.) At step four, the ALJ found that Plaintiff could not perform his past relevant work. (AR 24.) At step five, the ALJ found that Plaintiff could adjust to other

work that existed in sufficient numbers in the national economy. (AR 24.) Accordingly, the ALJ concluded that Plaintiff was not disabled. (AR 25–26.)

The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. (AR 1.) This lawsuit followed. (Doc. 1.)

## Legal Standard

The Commissioner's decision will be affirmed if it is supported by substantial evidence and free of legal error. *Wischmann v. Kijakazi*, 68 F.4th 498, 504 (9th Cir. 2023) (citing *Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1161–62 (9th Cir. 2012)). "Substantial evidence means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Glanden v. Kijakazi*, 86 F.4th 838, 843 (9th Cir. 2023) (quoting *Lingenfelter v. Astrue,* 504 F.3d 1028, 1035 (9th Cir. 2007)).

## Discussion

Plaintiff raises a single claim of error. He contends that the ALJ failed to provide legally sufficient reasons for rejecting his symptom testimony, particularly his testimony that he has extreme difficulty interacting with others and that he is prone to angry outbursts. (Opening Br. 7.) The Court agrees.

The ALJ discounted Plaintiff's testimony for the following reasons:

> [1] As for the claimant's statements about the intensity, persistence, and limiting effects of his or her symptoms, they are inconsistent because the record does not show the level of symptoms or limitations alleged. [2] His allegations that he cannot work because he cannot get along with others [are] not consistent with the treatment record showing the claimant was regularly calm and cooperative. [3] The allegations that he cannot handle the stress of work is not consistent with his ability to complete a master's degree. [4] In addition to the objective evidence, his allegations are not supported by his subjective reports and other subjective evidence. [4a] His allegations that he cannot get along with others is not supported by his report that he only attempted one job since the amended alleged onset date and that he quit because he did not like the supervisor. [4b] He did not report conflicts, anger, attempt to work for a different company or supervisor, or other signs he is unable to work with anyone. [4c] It is also not supported by his reports that he has been doing well and has not had any angry outbursts since the alleged

onset date.

(AR 23.)

When, as here, there is no evidence of malingering, an ALJ can reject a claimant's symptom testimony only by providing "specific, clear and convincing reasons." *Nerio Mejia v. O'Malley*, 120 F.4th 1360, 1363 (9th Cir. 2024) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)). This standard "requires an ALJ to show his work" and is satisfied when "the ALJ's rationale is clear enough that it has the power to convince." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022).

Here, the ALJ's first reason—Plaintiff's testimony is "inconsistent because the record does not show the level of symptoms or limitations alleged"—is not supported by substantial evidence. (AR 23.) An ALJ "cannot effectively render a claimant's subjective symptom testimony superfluous by demanding positive objective medical evidence fully corroborating every allegation within the subjective testimony." *Ferguson v. O'Malley*, 95 F.4th 1194, 1200 (9th Cir. 2024) (quoting *Smartt*, 53 F.4th at 498). Here, the ALJ effectively transformed the *absence* of corroborating objective evidence into *affirmative* evidence that Plaintiff's testimony is inconsistent with the record. In other words, the ALJ relied on what the record failed to demonstrate rather than on evidence that actually conflicts with Plaintiff's testimony. This was error: the absence of corroboration is not an affirmative inconsistency.

The ALJ's second reason—Plaintiff's testimony is "not consistent with the treatment record showing [he] was regularly calm and cooperative"—also is not supported by substantial evidence. (AR 23.) Plaintiff is correct that his cooperative demeanor during medical appointments is not inconsistent with his testimony that he cannot interact appropriately with supervisors or coworkers. (Opening Br. 12.) As other courts have recognized, "working with others and seeking help from [healthcare] professionals are not comparable situations. It is not reasonable to expect evidence that plaintiff snaps at professionals to confirm claims of not getting along with coworkers." *Withrow v. Colvin*, No. 14–cv–3037, 2015 WL 566704, at *7 (E.D. Wash. Feb. 11, 2015). A medical

appointment is typically brief and focused on the claimant's health, and the provider's role is supportive rather than supervisory. Unlike in the workplace, the claimant is not expected to maintain productivity, respond to criticism, or navigate relationships with multiple people throughout the day. *See Jacob R. v. Comm'r of Soc. Sec.*, No. C19-678, 2020 WL 5810215, at *2 (W.D. Wash. Sept. 30, 2020) ("Interactions with treatment providers are likely to be less demanding or more supportive than typical work settings and thus do not demonstrate an ability to work with coworkers, supervisors, or the general public in a work setting." (internal quotation marks and citation omitted)). The Commissioner argues that the ALJ's reasoning is rational and must be upheld, even if Plaintiff's view of the evidence is also rational. (Answering Br. 4–5.) The Court disagrees. The medical setting and workplace setting differ in important respects, and the ALJ should have explained why observations from one setting reasonably translate to the other before treating them as contradictory.

The ALJ's third reason—Plaintiff's "allegations that he cannot handle the stress of work is not consistent with his ability to complete a master's degree"—also is not supported by substantial evidence. (AR 23.) Plaintiff is correct that the ALJ did not address his actual symptom testimony. (Opening Br. 14.) The Commissioner does the same thing. (Answering Br. 5–6.) Plaintiff did not testify that he is unable to handle stress generally; he testified that he is stressed by, and cannot handle, the interpersonal demands of fulltime work:

> Q: I really just have a couple questions for you. One being in your very own words, what do you believe is preventing you from doing any type of job right now? Even the most simplest job with the most minimal interaction with people, what do you believe would be preventing you from working?
>
> A: I think just the stress of having to deal with people, having to make phone calls, having to take phone calls, having to work with others, I – the stress I guess would be the one word.

(AR 50.)

In certain contexts, educational attainment can be relevant evidence undermining testimony about difficulty getting along with others. *See Carter v. Colvin*, No.16-cv-00688,

2016 WL 7212538, at *5 (W.D. Wash. Dec. 13, 2016) (finding an inconsistency between allegations of difficulty interacting with others and the plaintiff's physical attendance and lack of behavioral issues at college). The context does not support that conclusion here, though, because Plaintiff obtained his degree through online classes. (AR 354, 405; Reply Br. 5.) In general, online programs allow students to complete coursework independently at home; interact with instructors through means like email rather than face-to-face; and avoid regular contact with peers. These conditions differ substantially from the workplace, where a person must interact appropriately with supervisors and coworkers throughout the day on a fixed schedule. So, there is no apparent inconsistency between Plaintiff's testimony and educational activities.[1]

The ALJ's fourth reason—Plaintiff's "allegations are not supported by his subjective reports and other subjective evidence"—also is not supported by substantial evidence. (AR 23.) The ALJ provided three examples. First, the ALJ found that Plaintiff's testimony "is not supported by his report that he only attempted one job since the amended alleged onset date and that he quit because he did not like the supervisor," not because of "conflicts," "anger," or "other signs he is unable to work with anyone." (AR 23.) But, at his hearing, Plaintiff *did* testify that there was a conflict. He stated that he quit because his supervisor was "argumentative" and had "insulted [his] integrity." (AR 36–37.) This is corroborated by his counseling notes. (AR 1195 (reporting that he had quit because of a "conflict with [his] supervisor" in which she "question[ed his] integrity").) Further, the fact that Plaintiff quit before the conflict escalated is consistent with his claimed limitations: a claimant who recognizes that he has lost tolerance for his supervisor can choose to quit as a way to avoid the type of hostile confrontations that Plaintiff had in prior employment. (*See* AR 604 (reporting that he lost a job in March 2021 after he "blew up" at his "idiot project managers"); AR 1195 (reporting that he had been "building a case" against his last supervisor).) The record shows that Plaintiff has quit for that reason before. (AR 744

[1] It is worth noting that Plaintiff told his providers he would not be using his degree in business management to seek employment, since that would require having a supervisor. (AR 875.)

(reporting "not being able to maintain employment due to being terminated or quitting usually involving challenges with interpersonal effectiveness").) The ALJ offers no explanation why Plaintiff's decision to quit shows that he could have continued working successfully without angry outbursts.

Second, the ALJ found it significant that Plaintiff did not "attempt to work for a different company or supervisor." (AR 23.) Plaintiff correctly identifies the flaw here: "the finding that [he] is 'not disabled' because he did not attempt to work while asserting that he was unable to work applies unsupportable circular reasoning." (Opening Br. 14.) A claimant who genuinely believes that he cannot work because of his impairments would ordinarily have little or no reason to seek employment. The ALJ "[f]ault[ed Plaintiff] for acting consistently with his allegations . . . ." (Opening Br. 14–15.)

Third, the ALJ found that Plaintiff's testimony is "not supported by his reports that he has been doing well and has not had any angry outbursts since the alleged onset date." (AR 23.) This finding ignores important context. The ALJ identified three instances in which Plaintiff told his providers that he was doing well. (AR 22–23.) All of them were during a period of unemployment. (AR 499 (doing "pretty good" in November 2022 since he was "no longer working"); AR 488 ("doing well" in June 2023, two months after quitting his final job); AR 875 ("doing much better" in December 2023 after "quitting his job").) These reports show that Plaintiff felt well when he did not have to deal with the interpersonal demands of the workplace. That is perfectly consistent with his testimony and does not support the ALJ's finding. Likewise, Plaintiff quit his last job shortly after the alleged onset date of March 5, 2023, and has since engaged in isolative behavior to deal with his anger. (AR 36–37, 51, 1173.) So it makes perfect sense that he has not had any outbursts since the alleged onset date.

In summary, the ALJ failed to provide clear and convincing reasons for discounting Plaintiff's testimony about difficulty interacting with supervisors and coworkers. This error requires reversal only if it was harmful, meaning it was not "inconsequential to the ultimate nondisability determination." *Leach v. Kijakazi*, 70 F.4th 1251, 1255 (9th Cir. 2023)

(quoting *Lambert v. Saul*, 980 F.3d 1266, 1278 (9th Cir. 2020)). Here, the ALJ found that Plaintiff can perform work involving occasional interaction with the public, coworkers, and supervisors. (AR 21.) Plaintiff reported that he has extreme difficulty getting along with others; that he cannot tolerate coworkers who he thinks are not giving enough effort or supervisors who he believes did not earn their positions; and that he reacts with anger when confronted with criticism or a mere difference of opinion. (AR 47–48, 357–58.) If accepted, this testimony shows that his impairments prevent him from tolerating ordinary interactions with supervisors and coworkers, making even jobs involving only slight interpersonal contact unsustainable. As a result, the Court concludes that the ALJ's error was harmful.

Plaintiff seeks remand for further proceedings as the remedy, and the Court agrees that further proceedings are appropriate. (Opening Br. 15.)

**Conclusion**

The Court recommends that the Commissioner's decision be **reversed** and that this matter be **remanded** to the agency for a new hearing and decision.

This recommendation is not immediately appealable to the United States Court of Appeals for the Ninth Circuit. The parties have 14 days to file specific written objections with the district court. Fed. R. Civ. P. 72(b)(2). The parties have 14 days to file responses to objections. *Id.* The parties may not file replies on objections absent the district court's permission. A failure to file timely objections may result in the waiver of de novo review. *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc). A party's objections or response to objections may not exceed 10 pages in length unless otherwise permitted by the district court. LRCiv 7.2(e)(3).

The Clerk of Court is directed to **terminate** the referral of this matter. Filed objections should bear the following case number: CV-25-00474-TUC-AMM.

Dated this 17th day of July, 2026.

Maria S. Aguilera

Honorable Maria S. Aguilera
United States Magistrate Judge